By written agreement dated April 28, 2009, plaintiff, a commodities trader with MBF Clearing Corporation, retained defendant Quadrino & Schwartz, EC., on an hourly fee basis, “to represent him in connection with the filing of long term disability claims under ,two Guardian group policies.” At that time, *438 the “look back period” for determining an employee’s “Insured Earnings,” used to calculate the amount of benefits to which the employee was entitled, was one year from the date of disability. As of May 1, 2009, the look back period was increased to three years.
In support of his malpractice claim, plaintiff alleges that defendants, without his knowledge, submitted a claim form that incorrectly stated that the date of his disability was “4/9/09,” which was the day he stopped trading, not the day he was determined to be disabled; the latter he alleges was May 13, 2009. Plaintiff contends that as a result of this error, Guardian applied the one-year look back period, which led to the denial of his claim on April 14, 2010, because his 2008 income tax return showed a loss. Although plaintiff, on a contingency fee basis, retained new counsel who successfully appealed the denial, he seeks to recover from defendants the additional costs, expenses and attorneys’ fees he incurred in prosecuting that appeal.
Supreme Court correctly determined that issues of fact exist as to whether the release signed by plaintiff on March 31, 2010, in connection with the settlement of his fee dispute with defendants, was obtained in violation of the Rules of Professional Conduct (22 NYCRR 1200.0) rule 1.8 (h) (2) (see Swift v Ki Young Choe, 242 AD2d 188, 192 [1998]; see also Newin Corp. v Hartford Acc. & Indem. Co., 37 NY2d 211, 217 [1975]). However, the malpractice claim must nevertheless be dismissed because the evidentiary materials submitted by the parties conclusively establish that defendants breached no duty to plaintiff, and that no alleged damages were caused by any act of defendants (see O’Callaghan v Brunette, 84 AD3d 581 [2011], lv denied 18 NY3d 804 [2012]; Between The Bread Realty Corp. v Salans Hertzfeld Heilbronn Christy & Viener, 290 AD2d 380, 381 [2002], lv denied 98 NY2d 603 [2002]).
To succeed on a motion to dismiss pursuant to CPLR 3211 (a) (1), the documentary evidence relied on by the defendant must “conclusively establish! ] a defense to the asserted claims as a matter of law” (Leon v Martinez, 84 NY2d 83, 88 [1994]). On a motion to dismiss pursuant to CPLR 3211 (a) (7), the court must “accept the facts as alleged in the complaint as true, accord plaintiffl ] the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory” (id. at 87-88). However, “allegations consisting of bare legal conclusions as well as factual claims flatly contradicted by documentary evidence are not entitled to any such consideration” (Maas v Cornett Univ., 94 NY2d 87, 91 [1999]).
*439 At the heart of plaintiffs malpractice claim is his assertion that defendants could have obtained the date of his disability from his treating physician, Dr. Schottenstein, at any time after May 13, 2009, but refused or neglected to do so. However, the record demonstrates that when plaintiffs new counsel argued in his June 14, 2010 appeal letter to Guardian that the claim turned on the date it was determined that plaintiff was disabled, not on the date he ceased trading, he relied on the “June 10, 2010 Medical Record of Dr. Douglas Schottenstein, NYSpinemedicine, which for the first time gives [plaintiff] a date of disability on May 13, 2010” (emphasis added). Defendants ceased acting as plaintiffs attorney on December 23, 2009, well before the June 10, 2010 record was available.
The documentary evidence further demonstrates that defendants’ submissions to Guardian were based on the information available to them. Defendants were retained to file a disability claim on April 28, 2009, which predates the date on which plaintiff claims it was determined that he was disabled. Plaintiff’s claim form, dated September 2, 2009, states that April 9, 2009 was the date that he became unable to work because of illness or injury. While plaintiff asserts that he signed the claim form in blank, the e-mail he relies on shows that he was provided with a draft claim form, asked to review it and complete the unanswered questions, and told that the information would then be typed into the form he signed. Further, on September 9, 2009, plaintiff sent defendants an e-mail stating that “[m]y last trading day was [A]pril 8th.” Defendants relied on that date to complete the disability claim form, which they submitted to Guardian that day.
Defendants also submitted to Guardian Dr. Afshin Razi’s physician’s statement, dated August 27, 2009, which states that Dr. Razi first evaluated plaintiff for his back condition on May 27, 2008, and last treated him on March 19, 2009, and that plaintiff had “[mjoderate limitations of functional capacity; capable of clerical/administrative (sedentary) activity (60-70%)” (footnote omitted). Dr. Razi added that plaintiff “cannot carry heavy bag or be on the trading floor where he may be jostled[,] which may injure his back.”
Consistent with the foregoing, the employer section of plaintiff’s disability claim, dated September 25, 2009, states that the date the disability began was “unknown,” that the last date plaintiff worked on the “floor” was April 7, 2009, and that the reason for leaving work was a disability. Defendants also provided Guardian with Dr. Razi’s and Dr. Schottenstein’s medical records, the receipt of which Guardian confirmed in a letter *440 dated October 20, 2009, in which Guardian advised defendants that it had requested additional information directly from the doctors.
We also note that Guardian’s denial was not final at the point that defendants ceased representing plaintiff on December 23, 2009. In its letter dated December 17, 2009, Guardian stated that it had been determined that plaintiffs disability was “supported” from April 7, 2009, but denied the claim because it had not received his 2008 tax return and trading statements or logs for the year April 8, 2008 through April 7, 2009, which were needed to determine his monthly benefit. The letter further advised counsel that if plaintiff wished to appeal the determination he needed to submit those documents. That information was provided to Guardian on February 22, 2010, at which point defendants no longer represented plaintiff. When Guardian denied plaintiffs disability claim on April 14, 2010 “because the information you submitted does not support any insured earnings as of the date you ceased work full-time on April 7, 2009,” it stated: “We did receive a new Long Term Disability Claim form from you dated March 23, 2010 indicating that your disability did not begin until May 8, 2009, however, we have copies of your trading records for 2009 that show that the last day you[ ] traded in April 2009 was April 8, 2009. Since we have no record of your trading past this date we would use this as the date you last worked.”
Thus, after defendants ceased representing plaintiff, Guardian, which had Dr. Razi’s and Dr. Schottenstein’s medical records, considered plaintiffs revised claim that his disability did not start until May 2009. Nevertheless, Guardian did not grant the claim until it received Dr. Schottenstein’s June 10, 2010 medical records.
Given these circumstances, the evidentiary submissions refute plaintiffs allegations that Guardian denied his disability claim because defendants failed to submit critical information that was or should have been available to them, and establish a defense as a matter of law warranting dismissal of the malpractice claim. Concur — Tom, J.P., Andrias, Catterson, Richter and Abdus-Salaam, JJ.